In the Matter of the Termination of Parental Rights of SKJ and SLJ, Minor Children.

PKJ, Appellant (Respondent),

v.

**JOHNSON COUNTY DEPARTMENT OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, Appellee (Petitioner).**

No. C–83–4.

Supreme Court of Wyoming.

Dec. 13, 1983.

Hardy H. Tate, Sheridan, for appellant.

Greg L. Goddard and John R. Perry of Goddard & Perry, Buffalo, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant appeals the trial court's termination of her parental rights to her two children, SKJ and SLJ. Appellant asserts that the evidence that she left her children in the care of another without provision for their support was not sufficient to justify terminating her parental rights. Appellant also claims that there was insufficient evidence to make a determination of neglect.

We will affirm.

Appellant is the mother of SKJ, born in July, 1977, and SLJ, born in January, 1980. In October, 1981, appellant told her brother that she no longer had funds with which to feed and clothe her two children and asked him to take care of them. The brother went from Sheridan to Buffalo and picked the children up from a cold trailer house; they were dirty and scantily dressed.

After caring for the children for several weeks and not hearing from his sister, it became apparent to the brother that he was financially unable to support the two children, so he called the Johnson County Department of Public Assistance and Social Services (hereinafter D–PASS) for help. D–PASS, investigating the case, filed a petition with the district court, sitting as a juvenile court, asking that the custody of SKJ and SLJ be transferred to them. At a hearing on November 24, 1981, appellant admitted neglect and custody was placed in D–PASS. Appellant's brother was approved as a foster parent, and the two children remained with him.

On December 22, 1982, D–PASS filed a petition to terminate parental rights alleging that appellant 1) had left her minor children in the care of another without making provisions for their support and without communication from her for a period in excess of one year, and 2) that the children were neglected by appellant and that she had refused rehabilitative treatment or that any rehabilitative effort had been unsuccessful and the children's health and safety would be seriously jeopardized by returning them to appellant.

The hearing on the petition to terminate parental rights was set for January 24, 1983, but was continued until February 14, 1983, because of the difficulty in locating appellant. At the conclusion of this hearing the trial court found:

"4. That there is sufficient basis for termination of the parental rights of [appellant], namely:

"(a) The children have been left in the care of another person (namely, [the brother] and the Johnson County Department of Public Assistance and Social Services) without provisions for their support and without communication from the natural parents for a period in excess of one (1) year.

"(b) The children have been neglected by their natural mother and father who have refused rehabilitative treatment and or rehabilitative efforts have been unsuccessful and the children's health and safety would be seriously jeopardized by returning them to either their natural mother or father."

Based on these findings the court terminated the parental rights of both appellant and the natural father and placed custody in D–PASS. Appellant appeals from the order terminating her parental rights. The natural father voluntarily relinquished his parental rights and did not appeal the court's order terminating parental rights.

■ Again we are called upon to balance two important rights or interests. The fundamental right to associate with one's immediate family must be weighed against the State's compelling interest in the protection and support of neglected, endangered and abused children.

■ The cold record of the trial cannot tell the entire story. The trial judge has the advantage of witnessing the demeanor of those who testify in order to determine their credibility, detect prejudice, motives, feelings of revenge and interest in the outcome of the trial. The trial judge is in a better position to judge the intelligence of witnesses. Because of these advantages and others we give considerable deference to the determination of the trial judge.

We have said before:

" 'We will examine the evidence in the light most favorable to the appellee and will resolve all conflicts in evidence for the appellee. [Citation.] We will assume the evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may fairly be drawn from it. [Citations.]' " *Matter of Parental Rights of PP,* Wyo., 648 P.2d 512, 514 (1982).

In *DS v. Department of Public Assistance and Social Services,* 607 P.2d 911, 918 (1980), we said:

" * * * The right to associate with one's immediate family is a fundamental liberty protected by the state and federal constitutions. *Stanley v. Illinos,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (integrity of the family unit protected by the due-process clause of the Fourteenth Amendment); and *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (implication that liberties guaranteed by the federal constitution are fundamental). * * * "

■ A parent has a fundamental right to have custody of his minor child; therefore, in a parental rights termination proceeding we must consider the evidence with "strict scrutiny." *Matter of Parental Rights of PP,* supra.

I

Section 14–2–309(a)(i), W.S.1977 (Cum. Supp.1983), provides:

"(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

"(i) The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year. In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications."

Appellant denies that she left her children in the care of another person without provision for their support, but rather, contends that she left them with Johnson County D–PASS.[1] The record is clear and undisputed that appellant left the children with her brother and that it was her brother who contacted D–PASS.

■ At the initial hearing on November 24, 1981, appellant admitted neglect and consented to D–PASS assuming custody of the children. Appellant takes the position that by consenting to the continued custody by D–PASS she somehow made provision for the children's support. We do not agree. Section 14–2–309(a)(i), supra, would be meaningless if appellant's interpretation was correct. In Wyoming if a child is left without support, someone or some agency will step in and care for the child, be it relative, church, state, county or stranger. When this occurs, the parent cannot say that he or she made the arrangement merely by giving consent to the arrangement.

---

1. Appellant had a vague recollection of giving small amounts of money to third persons for her children. Apparently neither the children, appellant's brother, nor D–PASS benefited from this money.

Appellant cites *In the Matter of Parental Rights of SCN and NAN,* Wyo., 659 P.2d 568, 573 (1983):

"* * * Under § 14–2–309(a)(i) the court must determine whether the child has been left without provision for support rather than whether a parent has willfully failed to support the child."

The facts in that case are easily distinguishable from the case at hand. In the earlier case we noted that appellee (father) had nothing to do with leaving the children with anyone. The children were placed in appellant's home by the court. The court did not need to proceed further because appellant could not get by the "threshold question" presented in the statute, that is, whether the children were left in the care of another person without provision for their support. This court stated there:

"* * * In view of those facts, the fact that appellee failed to make all but four (4) monthly support payments is not relevant here where the court could not get past the threshold question presented in the statute. Appellee's failure to pay regularly would be relevant under an adoption-without-consent proceeding or in an action to compel payment, but not here where the children have been placed in one parent's custody and the action to terminate parental rights is against the non-custodial parent. To hold otherwise would ignore our rule of strict construction in these cases and would allow section 14–2–309(a)(i) to be used in a manner for which it was not intended." *In Matter of Parental Rights of SCN and NAN,* supra, at 574.

Here, appellant left her children in the care of her brother without provision for support.

Between the initial hearing on November 24, 1981, and the hearing on the petition to terminate parental rights on February 14, 1983, appellant's contacts and communication with her children were at best sporadic. During this period of time appellant lived in Oklahoma, South Dakota and several places in Wyoming.

After D–PASS obtained custody in the November, 1981, proceeding, they made arrangements for appellant to contact her children by telephone. Appellant had limited contact with the children at first. There was some visitation at Christmas time, 1981, and shortly thereafter. Also, appellant gave the children Christmas presents.

The last visit appellant had with the children was in March 1982. Shortly after this visit appellant told Ms. Carrell, a family community service worker for D–PASS, that she wanted to relinquish her rights to her children. Appellant telephoned D–PASS in July 1982 from Sheridan. There was talk of seeing the children in Buffalo, but appellant said she could not come to Buffalo. In November 1982, D–PASS learned that appellant had moved to South Dakota, and both she and the man she was living with were unemployed. Parental termination proceedings were started in December 1982.

■ Implicit in the trial court's findings is that appellant's support contributions, contacts and communication with her children were incidental and should be disregarded. We agree. There was sufficient evidence to justify the trial court's termination of parental rights under § 14–2–309(a)(i), supra.

II

As an additional reason for terminating appellant's parental rights the court found that § 14–2–309(a)(iii), W.S.1977 (Cum. Supp.1983), was applicable:

"(a) The parent-child legal relationship may be terminated if any one (1) or more of the following is established by clear and convincing evidence:
"* * * * *

"(iii) The child has been abused or neglected by the parent and efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopar-

dized by remaining with or returning to the parent:"

In a 1982 parental rights case we considered the requirements of § 14–2–309(a)(iii), supra, and stated:

"Thus we examine the evidence to ascertain if it clearly and convincingly establishes the facts: (1) that CP has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical, or other care necessary for PP's well being; (2) that rehabilitative efforts by authorized agencies have been unsuccessful in correcting the situation; and (3) that PP's health and safety would be seriously jeopardized by remaining with or returning to CP. * * *"
*Matter of Parental Rights of PP,* supra, at 513.

Section 14–3–202(a)(vii), W.S.1977, defines neglect:

"Neglect means the failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well-being. * * *"

█ Succinctly stated, parental rights cannot be terminated under § 14–2–309(a)(iii) unless there is the necessary quantum of proof to show 1) neglect, 2) a refusal or failure of rehabilitation, and 3) that the health and safety of the children will be in jeopardy if left with the offending parent.

█ Most of the incidents and circumstances referred to in Part I of this opinion show neglect, and we consider them as did the trial court in connection with termination under § 14–2–309(a)(iii) supra. In addition to the instances of neglect indicated in Part I of this opinion, other incidents occurred. Before leaving the children with her brother in October 1981, appellant had left the children on other occasions to look for her husband somewhere in southwest Wyoming. On or about July 31, 1981, after receiving a complaint, the police found that appellant had left her children alone in a car behind a bar while she went inside.

There was a similar incident in Washakie County, January 23, 1981. The eldest child had some special developmental problems because of environment and emotions. At the November 24, 1981, hearing, the county attorney recited for the record these incidents of neglect. The court then asked appellant if the allegations were true and she said that they were.

In summary, appellant left her children without provision for support. She went on a frolic of her own to Oklahoma, South Dakota and different cities in Wyoming. She had a transitory companionship with several men. She neglected to tell anyone where she could be located. Her contacts and communication with the children were minimal at first and nonexistent later. She talked of relinquishing her rights to her children. Appellant failed to recognize and provide for the special needs of the eldest child, who had displayed developmental problems. When appellant last had physical custody of the children, they were poorly dressed, dirty and in a cold trailer. Appellant endangered the children by leaving them alone in a car on several occasions.

The threshold question of neglect having been established, we direct our attention to the next question under § 14–2–309(a)(iii), supra, that is, whether or not an authorized agency or mental health professional was unsuccessful in rehabilitating appellant or whether she refused rehabilitative treatment. *Matter of Parental Rights of PP,* supra, at 513. After the initial appearance hearing, November, 1981, appellant and D–PASS employees talked about a program to provide appellant with vocational and psychological counseling. Before March 16, 1982, appellant met with the Northern Wyoming Mental Health Center and the Division of Vocational Rehabilitation, for counseling and evaluation. She made some future appointments, but did not keep them. When appellant said she wanted to relinquish her children, Ms. Carrell of D–PASS thought such action premature and set up an appointment with appellant to talk about her problems. She did not keep the appointment.

Appellant testified that she went to three or four rehabilitative counseling sessions.

She stopped going because she "didn't like what he was trying to do. He was prying into my life too far." She also dropped out of the program because, as she said, "I don't have no problems."

The final element to be considered with regard to § 14–2–309(a)(iii), supra, is whether it was demonstrated that the children's health and safety would be seriously jeopardized should they be returned to appellant's custody. After testifying concerning her involvement with appellant and the children, Ms. Carrell concluded that the children's health and safety would be jeopardized by placing them with appellant. Appellant's brother and the children's guardian ad litem testified to the same effect. The conclusions and recommendations of Ms. Carrell, appellant's brother and the guardian ad litem were based upon the actions of appellant that have been described in this opinion.

The evidence produced at the initial hearing and the termination hearing met the "strict scrutiny" standard and was sufficient to justify the court in terminating appellant's parental rights under either § 14–2–309(a)(i) or § 14–2–309(a)(iii), supra.

Affirmed.