Deena L. WANGLER, personal representative of Fred W. Dilts, Jr., deceased, and Esterbrook Development Company, Appellants (Plaintiffs),

v.

M.V. FEDERER, a/k/a Bud Federer, Ronald S. Joseph, Big Wyoming Limited, Appellees (Defendants).

No. 85–125.

Supreme Court of Wyoming.

Feb. 27, 1986.

D.N. Sherard, Stephen N. Sherard, Rex E. Johnson of Sherard, Sherard & Johnson, Wheatland, for appellants.

Sue Davidson of Whitehead, Zunker, Gage, Davidson & Shotwell, P.C., Cheyenne, for appellees.

Before THOMAS, C.J., and BROWN, CARDINE, ROONEY (Retired), and RAPER (Retired), JJ.

BROWN, Justice.

Appellants conveyed real property to appellees for development by the latter under a profit-sharing arrangement. The contractual relationship between the parties fell on bad times, and appellants instituted an action against appellees seeking a declaratory judgment, specific performance, and damages for breach of contract.

The trial court held generally for appellees. On appeal appellants raise the following major issues: [1]

### I

Did the trial court correctly construe the rights and obligations of the parties under the May 23, 1977 agreement?

### II

Did the trial court correctly construe the rights and obligations of the parties under the February 1, 1980 memorandum of agreement?

We will affirm.

This appeal basically concerns the interpretation of two contracts entered into between the parties:

---

1. Appellants urge numerous sub-issues which we will address in this opinion.

1. Agreement for Purchase of Real Property executed on or about May 23, 1977 (hereinafter 1977 agreement).

2. Memorandum of Agreement executed on February 1, 1980 (hereinafter 1980 agreement).

Both of these contracts relate to the development of land and construction of dwellings in the Dilts Subdivision at Douglas, Wyoming. Generally, the above-referenced contracts concern the business relationship among Fred W. Dilts, Jr., Ronald S. Joseph and M.V. Federer and their sundry business entitites.

Fred W. Dilts, Jr. (hereinafter Dilts), plaintiff below, now deceased, owned and operated a real estate and insurance agency in Douglas, Wyoming, known as the Western Agency. Esterbrook Development Company, also plaintiff below, is a Wyoming corporation which purchases and sells real estate and holds real estate for investment purposes. Dilts and Fred W. Dilts III each owned 50 percent of the shares of stock in the corporation.

M.V. Federer (hereinafter Federer), defendant below, is in the general contracting and development business. Federer transacts business through the following entities:

(a) Big Wyoming Ltd., defendant below, a Wyoming limited partnership of which Federer is a twenty percent owner and the managing general partner;

(b) Consolidated Construction Company, a Wyoming corporation principally owned and controlled by Federer. This entity constructed the apartment complex (LaPrele Apartments, Ltd.) located on the south half of Block 8 of the Dilts Subdivision, the subject of part of the controversy here;

(c) La Prele Apartments, Ltd., a Wyoming limited partnership which owns the south half of Block 8 of the Dilts Subdivision and the apartment complex located thereon. Federer is the sole general partner and claims to own a five percent interest as general partner and nineteen percent as a limited partner;

(d) Spartan Management Company, an entity owned by Federer and his wife, which primarily engaged in the management of rental property. This entity managed La Prele Apartments, Ltd.

Ronald S. Joseph (hereinafter Joseph), defendant below, is an employee of Federer through Consolidated Construction Company.

## I

On May 23, 1977, Esterbrook Development Company, seller, and Federer and Joseph, buyers, entered into an agreement for the purchase and development of real property located in Douglas, Wyoming, known as the Dilts Subdivision. Generally, this agreement provided that Esterbrook Development Company sell approximately 35 acres of land, or all of the Dilts Subdivision, except Block 8, to Federer and Joseph, who in turn were to subdivide and develop it.

Paragraph 4 of the agreement provided in part:

"4. It is understood by and between the parties hereto that as additional consideration for Seller's election to sell hereunder, that Western Agency, through Fred Dilts and Fred Dilts III as brokers therein, are hereby granted an exclusive right to sell listing for resale of developed lots *or* residential units which may be constructed on lots to be platted in the area at a stated real estate commission of five percent (5%). *Exercise of this listing agreement shall be as follows:*

"(A) Upon prospective sale of *developed, vacant lots* by Buyer herein, prior to the construction of residential units, Seller herein shall have the *first right of refusal* to purchase at the same price less a five percent (5%) discount.

"(B) Also, Seller herein specifically reserves the *right to resell* any *completed residential units,* provided, however, that after ninety (90) days after the date of substantial completion, if any unit has not been subjected to a bona fide purchase offer for sale

through the efforts of Western Agency or otherwise, then the above referred to exclusive right to sell agreement in Western Agency shall change to an exclusive agreement in which Buyers themselves may then use their own efforts to sell the units, and in which case if the sale is then completed by Buyers themselves they may deduct from the commission of five percent (5%) otherwise payable to Western Agency any and all accrued builders interest specifically accruing upon the particular units, and in the event any unit is finally sold through the efforts of Western Agency or of the Buyer, Western Agency shall still be entitled to the agreed commission less the proper deductions for accruing builders interests on the unit." (Emphasis added.)

The agreement is not a model of contract draftmanship. Its meaning is anything but clear. Apparently the parties themselves could not understand it and, therefore, modified its terms by actual practice in that Federer and Joseph sold developed vacant lots to outside parties and paid a five percent commission to Western Agency in lieu of the first right of refusal provided for in subparagraph (A).

Nonparty building contractors who constructed residential units on the lots were asked to list the units with Western Agency subject to the terms of the 1977 agreement, but they did not necessarily comply.

When the relationship of the parties under the contract deteriorated, appellants brought suit, claiming that appellees had failed to perform as required by the contract. The judgment, after a trial to the court, awarded appellants interest and commissions determined to be due under the provisions of the 1977 agreement.

At the time of trial there were 39 unsold developed vacant lots in the Dilts Subdivision. The issue on appeal relative to the 1977 agreement concerns the rights of the parties in these 39 remaining lots. The district court, in paragraph 5 of the amended judgment, ordered:

"5. In accordance with the terms of Paragraph 4 of the May 1977 Agreement, the 39 individual lots remaining unsold in the Dilts Subdivision at the time of trial, as individually sold, are subject to either a 5% commission on unsold lots or a listing obligation for nonparty contractors for a 90 day period after substantial completion of construction of residential units on the undivided lots. The first right of refusal provision of the section is unaffected by this Judgment as to an individual or general sale of those remaining lots."

The court determined that appellants failed to prove other claims under the 1977 agreement.

In essence, appellants now claim that with respect to the 39 unsold lots, the 1977 agreement as modified entitles them to both a five percent commission on the sale of developed but vacant lots *and* the exclusive right to list and sell residential units built on the lots. We cannot agree.

We have said that

"* * * Ambiguous contracts are agreements which, because of the language used, are obscure in their meaning. [Citations.] If upon a reading of the questioned agreement, we perceive an ambiguity, then resort to extrinsic evidence is proper in order to fully determine the intent of the contracting parties. * * * [W]ith an ambiguous agreement we will look to all of the surrounding circumstances and extrinsic evidence introduced with respect to intent. Generally, the question of intent is one of law, and fact questions only arise when the language utilized is not clear on its face. [Citation.]" *Rouse v. Munroe*, Wyo., 658 P.2d 74, 77–78 (1983).

 As noted above, the agreement presented here is far from clear on its face. However, having applied the rules stated above and having reviewed the record in its entirety, we find that under the original terms of the agreement appellants had the exclusive right to list and sell developed lots *or* residential units at a commission of five percent. That right was to be exer-

cised in one of two ways. Subparagraph (A) gave appellants the right of first refusal. That is, appellants were to have the first opportunity to purchase developed but vacant lots at five percent less than the proffered purchase price. Appellants could purchase the lots and do with them as they pleased, obviously including listing and selling them exclusively through Western Agency, or they could forego purchase of the lots and thereby activate subparagraph (B). If appellants chose the latter course, they would then be entitled upon substantial completion of a residence on the lot to an exclusive listing for 90 days. If they sold the residence within 90 days, they would be entitled to the five percent commission. If they failed to sell within 90 days, appellees would have the exclusive right to sell, and upon sale, appellants would be entitled to the five percent commission. Under these terms, appellants were entitled either to purchase developed but vacant lots at a five percent discount, or to sell residential units under a 90-day exclusive listing agreement with a five percent commission. That they were not entitled to both under the original contract terms is evidenced in part by the testimony of Fred W. Dilts III. At trial, he stated

"* * * that consideration under the contract is still due to Western Agency. * * Either the first right of refusal under the contract * * * or once a house was constructed on it, then the right to sell the house and take the five percent * * *."

Upon hearing all the evidence, the trial court found, and neither party disputes, that the original terms of the agreement were in effect modified by the conduct of the parties. Instead of giving appellants the right of first refusal, appellees sold developed but vacant lots to third parties and tendered a five percent commission to appellants. Without raising any objection to this process, appellants accepted the five percent commission. Neither party contends that the agreement was not modified nor that the trial court's finding of a modification was improper. In fact, appellants' brief demonstrates their complete agreement with the trial court's finding "that

the first right of refusal on developed but vacant lots was modified so that now appellants are entitled to a 5% commission on the sale of said lots by [appellees] in lieu of said first right of refusal."

Apparently, however, appellants believe that despite the modification of subparagraph (A), subparagraph (B) remains in full force and effect. Were we to accept that contention, appellants would ostensibly be entitled to a five percent commission upon the sale of residences, in addition to the five percent commission upon the sale of developed but vacant lots to which they are entitled, due to the modification of the contract terms.

As indicated above, under the original terms of the contract, appellants were entitled either to purchase developed but vacant lots at a five percent discount or to sell residential units under an exclusive 90-day listing agreement at a five percent commission; they were not entitled to both. The fact that a modification of the contract occurred in actual practice does not now entitle appellants to twice the benefit they would have received under the original terms.

 In giving effect to the intent of contracting parties, we are governed by the rule that common sense and good faith are the necessary considerations in contract construction. *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982). The words and acts of the parties must be given effect in accordance with the meaning which they would convey to reasonable men at the time and place of their use or commission. 17 Am.Jur.2d Contracts § 243, p. 630 (1964).

 Keeping these standards in mind, we find that the only reasonable construction that can be given the contract in light of the modification is that the modification of subparagraph (A) of paragraph 4 of the 1977 agreement effectively modified subparagraph (B) as well. Where the modification of one contract provision has the effect of substantially affecting the parties' rights and obligations under other con-

tract provisions, the modification must be said to extend to the other provisions as well.

We cannot say that the trial court's interpretation of the 1977 agreement was incorrect.

## II

Appellants next contend that the trial court incorrectly construed the rights and obligations of the parties under the 1980 agreement. That agreement involved Block 8 of the Dilts Subdivision which was excluded from the 1977 agreement.

On February 1, 1980, Dilts, Joseph, Federer, Big Wyoming, Ltd., Esterbrook Development Company and La Prele Apartments, Ltd., entered into a memorandum of agreement.[2] Dilts, Joseph and Federer testified that this memorandum of agreement created a partnership relationship among them.

On February 4, 1980, pursuant to the terms of the agreement, Esterbrook Development Company transferred Block 8 to Big Wyoming, Ltd., for the agreed sale price of $20,000.[3] Thereafter Big Wyoming, Ltd., secured a development loan and used Block 8 as collateral. The property was transferred by Big Wyoming to La Prele Apartments, Ltd., before development was completed in the summer of 1981.

The 1980 agreement provided, among other things, that:

1. Esterbrook Development Company sell Block 8 to Big Wyoming, Ltd. for $20,000;

2. Big Wyoming, Ltd., with borrowed funds using Block 8 as security, finance the development of Block 8 and prepare it for construction;

3. When Block 8 was developed, Big Wyoming, Ltd. transfer the property to a proposed limited partnership, La Prele

Apartments, Ltd., to be comprised of and owned by Dilts, Federer and Joseph, or whomever else they agreed upon;

4. The sale price to La Prele Apartments, Ltd., was to be the "then appraised value of the property in its developed condition";

5. La Prele Apartments, Ltd., borrow funds to pay for the land and to pay for the construction of apartments;

6. The profit from the sale of Block 8 to La Prele Apartments, Ltd., to be the sales price, less land and development costs;

7. The profit from the sale to La Prele Apartments, Ltd., to be divided equally among the parties;

8. Each party could either take cash for its share of the profits or float its share back into La Prele Apartments, Ltd.

As with the 1977 agreement, the parties to the 1980 agreement departed from its terms in actual practice.

In June 1980, Federer, in behalf of La Prele Apartments, Ltd. (not yet created), entered into an agreement with an architect who was to design and supervise construction of the apartments. On February 20, 1981, Big Wyoming, Ltd., transferred the south half of Block 8 to La Prele Apartments, Ltd.

On or about the first day of March 1981, Federer entered into four "purchase offer acceptance and receipt agreements" with four individuals by the terms of which Federer contracted to transfer approximately 76 percent of the interest in La Prele Apartments, Ltd. (still not a formalized partnership) to these four individuals. This transfer of interest was subject only to the HUD initial closing which had to occur during 1981, and which in fact did occur during the first part of April 1981.

On or about March 31, 1981, Federer received written notice from Lambrecht

---

2. Although La Prele Apartments, Ltd., purported to enter into the 1980 agreement, it was not created until April, 1981.

3. In June of 1979, Esterbrook Development Company gave an option to purchase part of

Block 8 to a fictitious entity called "La Prele Venture Ltd." This option was extended on September 30, 1980. The purpose of this option is not entirely clear.

Mortgage Corporation that a loan in the amount of $1,716,000 had been approved to La Prele Apartments, Ltd. Thereafter, on April 1, 1981, Federer, as general partner of La Prele Apartments, Ltd., executed a mortgage and mortgage note in favor of Lambrecht Realty Corporation in the amount of $1,716,000. In conjunction therewith, Federer, on behalf of Consolidated Construction, entered into a construction contract with La Prele Apartments, Ltd., and also signed the agreement.

On April 3, 1981, Federer formally created La Prele Apartments, Ltd. Federer, as general partner, received a five percent interest. The limited partner, as nominee, controlled 95 percent of the partnership interest. The limited partners, later to be identified, were to front 100 percent of the capital investment.

During August of 1981, Federer delivered to Dilts a cost breakdown of the development costs incurred in the development of Block 8. It showed that the south half of Block 8 was sold to La Prele Apartments, Ltd., for a price of $96,000. Federer determined the costs of developing Block 8 by prorating all of the costs incurred in the development of the entire Dilts Subdivision.

Dilts objected to the development costs as presented by Federer, and further objected to the alleged price paid by La Prele Apartments, Ltd. for the developed ground as set forth in the cost breakdown. On September 30, 1981, Dilts indicated that he was going to get a separate appraisal pursuant to the terms of the 1980 agreement. An appraisal was later obtained by Dilts which reflected that Block 8, during May, 1981, was worth $370,000 in a developed condition. Meanwhile, the apartments on the south half of Block 8 were being constructed.

On or about December 15, 1981, La Prele Apartments, Ltd., transferred 76 percent of the partnership to four individuals pursuant to the terms of the March 1, 1981 purchase offer, acceptance and receipt agreements. Federer retained a five percent general partnership interest and a nineteen percent limited partnership interest. Each of the limited partners were to pay $80,000 for their respective interests.

Construction of the apartments continued, and on or about January 21, 1982, Federer submitted a request for permission to occupy pursuant to the terms of the HUD agreement. The north half of Block 8 had been titled in the name of Big Wyoming, Ltd., since the transfer to it by Esterbrook Development Company in February, 1980. The 1980 agreement provided that Dilts would own one-third of any portion of Block 8 where there had been no construction.

The trial court awarded appellants one-third of the profits realized in the sale of the south half of Block 8 to La Prele Apartments, Ltd., a one-third interest in the north half of Block 8 subject to indebtedness for construction costs, and also quieted title to Northland Park Subdivision in appellants. The trial court also determined that Dilts had waived or otherwise given up any right he had to participate in the La Prele Apartments, Ltd. Finally, the trial court determined that appellants failed to prove other claims or damages under the 1980 agreement.

In extensive findings of fact and conclusions of law, regarding Block 8 and the 1980 agreement, the trial court concluded:

"VIII. Dilts Subdivision, Block 8

"A. Partnership Interests in La Prele Apartments, Ltd.

"18. The February 1980 Memorandum Agreement was not a binding contract concerning percentage of interest in La Prele Apartments, Ltd. Although the agreement contemplated the organization of such an entity, the details were left to be agreed upon at a later time by the parties. (17 Am.Jur. Contracts § 75, et seq. *Madrid v. Norton*, (Wyo.1979), 596 P.2d 1108 at 1119).

"19. The December 31, 1981 time constraint placed upon Plaintiff Fred W. Dilts, Jr.'s decision to participate in La Prele Apartments, Ltd. was reasonable in light of tax benefits and the circum-

stances surrounding the final syndication of that entity.

"20. The provisions of the February 1980 Memorandum, wherein Big Wyoming, Ltd. agreed that Fred W. Dilts, Jr. would be a principal in La Prele Apartments, Ltd., was subject to Plaintiff Dilts, Jr.'s acceptance of and action upon the opportunity to participate in the syndication of that organization.

"21. The opportunity extended to Plaintiff Fred W. Dilts, Jr. to participate in La Prele Apartments, Ltd. fulfilled any responsibility owed by Defendants Federer, Joseph, and Big Wyoming, Ltd. under the 1980 Memorandum with regard to Plaintiff Dilts' participation in La Prele.

"22. The final syndication of La Prele Apartments, Ltd. without Plaintiff Fred W. Dilts, Jr.'s participation therein as principal was the result of Plaintiff Dilts' failure to act by the December 31, 1981, deadline rather than by action or inaction on the part of Defendants M.V. Federer or Ronald Joseph.

"23. Plaintiff Fred W. Dilts, Jr. was not prejudiced by the April, 1981 formation of La Prele Apartments, Ltd. considering his awareness of the terms of Paragraph 4 of the 1980 Memorandum, the formation of La Prele Apartments, Ltd., with Walter C. Urbigkit as nominee of the limited partnership interests, and Plaintiff Dilts' subsequent failure to participate in La Prele when the opportunity was presented to him.

"B. Profit from the sale of Phase I, Block 8 of La Prele Apartments, Ltd.

"24. Profits from the sale of Phase I (or the South ½) of Block 8 are to be determined by subtracting the land and development costs allocated to Phase I from the final sales price of Phase I when that land was transferred from Big Wyoming, Ltd. to La Prele Apartments, Ltd. (See Paragraph 9 of the February 1980 Memorandum).

"25. As evidenced by Plaintiff's Exhibit No. 125, by the option to purchase real estate and extension thereto, and by the testimony of Defendant M.V. Federer,

Defendant Ronald Joseph, Fred W. Dilts, III, and Plaintiff Fred W. Dilts, Jr., the final sales price for the sale of Phase I (or the South ½ of Block 8) to La Prele Apartments, Ltd. was $95,800 (ninety-five thousand, eight hundred dollars).

"26. The independent appraisals done by Irle Briggs and W.S. Bobbitt were requested and completed subsequent to the determination of the final sales price for the South ½ of Block 8.

"27. Total land and development cost attributable to Phase I of Block 8 is $82,465 (eighty-two thousand four hundred sixty five dollars).

"28. Total profit from the sale of the South ½ of Block 8 to La Prele Apartments, Ltd. is $13,335.00 (thirteen thousand three hundred thirty-five dollars), one-third of which, or $4,445.00 (four thousand four hundred forty-five dollars) is due and owing Plaintiff Fred W. Dilts, Jr. from Defendants M.V. Federer, Ron Joseph, and Big Wyoming, Ltd.

"C. Status of N½ of Block 8

"29. Pursuant to the terms of the February 1980 Memorandum Agreement as modified by the subsequent sale of the South ½ of Block 8 to La Prele Apartments, Ltd., Plaintiff Fred W. Dilts, Jr., and Defendants M.V. Federer and Ronald Joseph are each entitled to a one-third interest in the North ½ of Block 8, subject to $69,034 (sixty-nine thousand thirty-four dollars) of land and development cost attributable thereto.

"30. Defendants M.V. Federer and Ronald Joseph are entitled to reimbursement for land and development expense for the N½ of Block 8; however, the agreement among the parties did not contemplate reimbursement for interest on that expense."

We have often stated our applicable standards of review. On appeal, we accept the evidence presented by the prevailing party as true, leaving out of consideration entirely conflicting evidence presented by the unsuccessful party, giving every favorable inference that may fairly and reasonably be drawn from the

successful party's evidence. *Matter of Abas*, Wyo., 701 P.2d 1153 (1985); and *Stockton v. Sowerwine*, Wyo., 690 P.2d 1202 (1984). The findings made by a trial court are presumed to be correct, and we will not disturb such findings unless inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. *Walter v. Moore*, Wyo., 700 P.2d 1219 (1985); and *Lebsack v. Town of Torrington*, Wyo., 698 P.2d 1141, reh. denied and case remanded 703 P.2d 338 (1985). In the present case we find the trial court's conclusions supported by the evidence presented, and we are, therefore, obliged to uphold them.

Appellants claim appellees violated their fiduciary duty as partners to Dilts by allegedly failing to disclose all relevant information to him. Specifically, appellants claim that Dilts was not informed of the appellees' attempts to obtain financing from HUD, or of the agreement made between Federer and an architect to design La Prele Apartments.

It should be noted that the 1980 agreement was prepared for Dilts by his son (Fred W. Dilts III), an attorney. Also, Dilts was requested to make a decision as to whether or not he wished to participate in La Prele Apartments, Ltd., on at least three occasions. He admitted that he failed to make a decision even when he received letters requesting a decision.

Furthermore, Dilts was a real estate broker in the Douglas area. It is unlikely he had no knowledge, as claimed, of the development of Block 8 when he worked in the area and held a financial interest in the development. Finally, Dilts signed a one year option on behalf of appellant Esterbrook Development Company allowing La Prele Apartments, Ltd., to purchase the north half of Block 8 (known as Phase II of the Dilts Subdivision) for $95,800, which price was set by him.

Considering all the facts and circumstances, we find the trial court's ruling supported by the evidence. Our holding finds additional support in the well-established principle that when construing a written agreement, the meaning of the instrument is to be derived from the language of such instrument if its terms are clear and unambiguous. *Wyoming Recreation Commission v. Hagar*, Wyo., 711 P.2d 402 (1985); and *Bowen v. Korell*, Wyo., 587 P.2d 653 (1978). If the terms are clear, then it falls within the province of the court to construe the instrument as a matter of law. *Madison v. Marlatt*, Wyo., 619 P.2d 708 (1980).

In this case, there are no unique legal principles; the case turns on a factual determination. In such situations, we give great deference to the fact finder. *Matter of SKJ*, Wyo., 673 P.2d 640 (1983).

Affirmed.