Samuel J. KLUTZNICK,
Appellant (Defendant),

v.

Walter W. THULIN and M. Joan Thulin, husband and wife; Robert E. White and Co., a Wyoming General Partnership, Robert E. White and Barbara G. White, General Partners; Robert S. Cheek and Jean R. Cheek, Robert S. Cheek, Trustee for Jean Rick Cheek, Robert S. Cheek, III, and Deborah P. Cheek, Appellees (Plaintiffs).

No. 91–5.

Supreme Court of Wyoming.

July 16, 1991.

Phelps H. Swift, Jr. (argued), Mullikin, Larson & Swift, Jackson, for appellant.

Robert B. Ranck (argued), Ranck & Schwartz, Jackson, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant, Samuel J. Klutznick (Klutznick) sought to renovate a garage and workshop which was located on his property and to build a new garage. The appellees objected contending that Klutznick's plans violated the restrictive covenants and an easement agreement. The district court granted summary judgment in favor of appellees who were the neighbors of Klutznick.

We reverse.

## ISSUES

Klutznick raises these issues:

"I. Did the District Court err in its interpretation of the instruments restricting the use of Appellant's real property?

"II. Did the District Court err in its denial of Appellant's Motion for Summary Judgment seeking a determination that the width of the easement across Appellant's real property is twenty (20) feet?"

Appellees state these issues:

"1. Did the district court correctly interpret the 1968 Easement Agreement to create a 60' easement within which there ran a 20' roadway?

"2. Did the district court correctly interpret the 1986 Easement Agreement to limit the encroachment upon the 60' easement to a garage and workshop?"

## FACTS AND PROCEEDINGS BELOW

On May 1, 1990, appellees sought to enjoin Klutznick from constructing a second garage on his property located near Wilson, Wyoming. In their complaint for injunction, appellees contended the construction of a second garage violated the terms of restrictive covenants that encumbered the property because only one garage was permitted per lot. On that same date, the district judge granted appellees a temporary restraining order. The parties agreed to continue the temporary restraining order until such time as a hearing was requested.

On July 6, 1990, Klutznick sought dissolution of the temporary restraining order based on these assertions:

"1. The Temporary Restraining Order entered herein enjoined [Klutznick] from constructing a second garage on his property under Teton County Building Permit No. 90–008. This building permit has been abandoned by [Klutznick].

"2. [Klutznick] has revised his construction plans to remodel the existing garage into a utility building and to construct a new garage on his property. Teton County has issued permit No. 90–202 for the construction of these improvements.

"3. The new construction plans do not violate the restrictive covenants. There will only be one garage on [Klutznick's] property which is expressly permitted

pursuant to the covenants referenced in [appellee's] Complaint for Injunction.

"4. [Klutznick] has employed a construction crew to build the improvements. The construction plans comply with the Teton County Comprehensive Plan and the private covenants."

The restrictive covenant which gave rise to this litigation reads, in pertinent part:

"2. No building, structure or improvements shall be erected, placed or permitted to remain on either subdivided tract of the property except for one single family dwelling, one guest house, one garage and accessory or outbuildings common to the location."

On July 13, 1990, appellees filed an amended complaint in which they alleged that prior agreements, as well as the understanding of the parties, established that the garage/workshop on the Klutznick property could not be converted to any other use and had to be maintained as a garage/workshop. This allegation was based on the language of a 1968 Easement & Maintenance Agreement which established a road that meandered throughout the area where the appellees' and Klutznick's homes were located. The road is described in detail in a survey, but for purposes of this case we are principally concerned with the requirement that the road be located on "a strip of land 20 feet in width meandering with various courses and distances but within at all times the west 60 feet of the following described tract * * *." The tract described is essentially the west 60 feet of the Klutznick property. This easement was altered somewhat by a 1986 easement agreement which was entered into in recognition that the garage/workshop on Klutznick's property (actually the agreement was entered into by Klutznick's predecessor in interest) was constructed within the west 60 feet of the property and was, thus, within the easement on which the road was located. The agreement went on to say:

"1. *Acknowledgment of Improvements.* The Neighbors acknowledge that the garage and workshop do not interfere with their use and enjoyment of the Easement. Jonkes [Klutznick's predecessor in interest] may remodel, reconstruct or otherwise improve the garage and workshop so long as (a) it does not interfere with the Neighbors' use of the Easement to provide reasonable access to their respective properties and (b) it does not encroach further into the west sixty (60) feet of the Jonke property."

The parties stipulated that Klutznick had actual notice of the 1986 easement agreement prior to his purchase of the property and that the issue to be decided by the district court was whether a preliminary injunction should issue prohibiting Klutznick from converting or modifying the existing garage/workshop to a "utility building" or any other structure other than a garage/workshop, and then constructing a new garage or any other structure that will be used as a garage.

Appellees later filed a second amended complaint in which they alleged that Klutznick could not remodel the existing garage/workshop into anything other than a garage/workshop and, further, that Klutznick had constructed guest quarters underneath the existing garage. This guest quarters allegedly violated the covenant quoted above because his property could have only one guest quarters, and Klutznick already had one guest quarters.

At the hearing into this matter, some appellees testified that their understanding and interpretation of the 1986 easement agreement was that the old garage/workshop could not be converted to another use, but had to remain a garage/workshop.

On November 26, 1990, the district court entered the following order:

"DISCUSSION

"[Appellees] have a 20' roadway easement over the west 60' of [Klutznick's property]. While the roadway is 20' wide, it meanders at various courses and distances over the west 60' of [Klutznick's] property and therefore is a burden on the entire 60'.

"It was the intent of the parties as manifested by the Easement Agreement of

1986 to clarify this situation. There would have been no need for the Easement Agreement if [appellees] were not entitled to the use of a 20′ roadway anywhere on the 60′ strip of property along the west side of [Klutznick's] property. "[Appellees] are entitled to summary judgment for the relief sought in their complaint.

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

"1. [Appellees'] Motion for Summary Judgment is hereby granted.

"2. [Klutznick], his agents, servants, employees, and persons under his control are hereby permanently enjoined from converting or modifying the old garage and workshop to a 'utility building' or any other structure other than a garage and workshop; and constructing the new garage or any other structure which will be used as a garage.

"3. [Klutznick] is hereby ordered to remove the guest quarters beneath the old garage and to use that space only as a garage and workshop."

## DISCUSSION

In analyzing this case, we employ our usual test for review of summary judgment. *See Four Nines Gold, Inc. v. 71 Constructions, Inc.*, 809 P.2d 236, 238 (Wyo.1991). Klutznick argues in this appeal that the 1986 easement agreement is sufficiently clear and unambiguous that it should be construed without reference to attendant facts and circumstances or extrinsic evidence. He also contends that a construction of that document which concludes that the garage/workshop could not be changed to another use is strained and incorrect. In addition, he claims that the roadway easement is only 20 feet wide and not 60 feet wide and, therefore, the 1986 easement agreement is essentially meaningless. Finally, Klutznick contends that there is no evidence in the record to support a conclusion that he is using the old garage/workshop as a guest quarters. The only evidence on this subject is Klutz-nick's testimony that it was *not* a guest quarters.

As was recognized by the district court in its comments during the hearing into this matter, review of the documents in this case must be conducted in the light of established contract law. The intention of the parties to a clear and unambiguous written agreement will be derived from the entire writing and determined as a matter of law. *Kerper v. Kerper*, 780 P.2d 923, 934 (Wyo.1989). Extrinsic evidence will not be used to contradict the plain meaning of a clear and unambiguous written agreement. *Id.* We will not rewrite a clear and unambiguous contract under the guise of interpretation. *Id.* We employ common sense and good faith in construing contracts, and the words and acts of the parties must be given effect in accordance with the meaning which they would convey to reasonable men at the time and place of their use or commission. *Wangler v. Federer*, 714 P.2d 1209, 1213 (Wyo.1986). Here, it is clear that the neighbors acknowledged that the old garage/workshop did not interfere with their use and enjoyment of the roadway into which that building encroached. The fact that it did encroach was established by the agreement also. The neighbors also agreed that Klutznick could remodel, reconstruct or otherwise improve the garage/workshop so long as it did not interfere with the use of the roadway and did not encroach further into the 60 foot easement. "Remodel" means "to model anew: RECONSTRUCT." "Model" means "to plan or form after a pattern: FRAME, SHAPE." Webster's Third New International Dictionary 1921, 1451 (1981). "Reconstruct" means "to construct again: as a(1): to build again: REBUILD." *Id.* at 1897. "Improve" means "1a: to make greater in amount or degree: INCREASE, AUGMENT, ENLARGE, INTENSIFY. * * * 2c: to increase the value of (land or property) by bringing under cultivation, reclaiming for agriculture or stock raising, erecting buildings or other structures * * *." *Id.* at 1138. In short, when the clear and unambiguous language of the 1986 easement agreement is construed in accordance with the rules of con-

tract construction outlined above, we can only conclude that Klutznick was *not* prohibited by the 1986 easement agreement from converting the old garage/workshop to another use permitted by the covenants and not in violation of the restrictions in the 1986 easement agreement, *i.e.,* does not interfere with use of the roadway and does not further encroach onto the 60 foot easement. Hence, we reverse the summary judgment for appellees and direct the entry of summary judgment in favor of Klutznick as to this issue.

It is equally clear that any improvements to be made by Klutznick must be in conformance with the restrictive covenants contained in his deed. Because the district court disposed of this case on the basis of the 1986 easement agreement, it did not address the question of whether Klutznick's planned improvements conformed to the restrictive covenants. The covenants are equally as clear and unambiguous as was the 1986 easement agreement. We conclude that the real question in this case is conformity with the covenants and, therefore, it is necessary to remand the case to the district court for appropriate fact finding on that issue should the parties find that necessary. The improvements, existing and proposed, must be tested only against the restrictions contained in those covenants. Except for the waiver of the encroachment into the 60 foot easement, the 1986 easement agreement can have no effect on enlarging or restricting the meaning of the covenants.

The summary judgment of the district court is reversed in its totality, and the matter is remanded to the district court for further proceedings consistent with this opinion.

URBIGKIT, Chief Justice, concurring with opinion, with whom GOLDEN, Justice, joins.

I concur in the decision and the court's opinion. I write further only to make clear, with reversal of the summary judgment, that no intimation should follow for any retrial proceeding or litigation that may hereafter be instituted that the easement at issue is actually sixty foot in width.

It would first be concluded that the easement was created by the agreement of June 10, 1968 and not altered in size or location by the easement agreement of September 14, 1986. The latter document contained no conveyancing or granting language demonstrating an intent to extend the size of any easement that was then in existence.

This is a simple case with relatively direct language. The configuration and location of the prospective roadway and anticipated easement is found in the 1968 document and its exhibits G & H and states:

3. EASEMENT. Erkins and Bert hereby grant, assign and set over to Weisbrod, Cameron and White to use as a means of ingress and egress to and from that property owned by Weisbrod, Cameron and White as well as to their guests and invitees said road to be a private road for the benefit of the Weisbrod, Cameron and White property, the following described property, to-wit:

That property described on EXHIBITS G and H annexed hereto.

In exhibits G and H to that agreement, we find the description as follows:

Robert Erkins Part

To-wit:—

A strip of land 20 feet in width meandering with various courses and distances but within at all times the west 60 feet of the following described tract: [metes and bounds description of entire parcel].

EXHIBIT G

A.W. Erkins Part

To-wit:—

A strip of land 20 feet in width meandering with various courses and distances but within at all times the west 60 feet of the following described lands: [metes and bounds description of entire parcel].

## EXHIBIT H

I find no question about what was provided by this explicit description in the document. There was a right to build a road within the west sixty feet and, when built and where built, the road included a twenty foot easement. This is the plain meaning of clear language and, in my persuasion, neither requires nor permits further interpretation. *Knadler v. Adams*, 661 P.2d 1052 (Wyo.1983); *Dawson v. Meike*, 508 P.2d 15 (Wyo.1973).

In this regard, I concur with the trial court in its first discussion paragraph of the Order Concerning Motions for Summary Judgment and Summary Judgment in recognition of the twenty foot wide easement. However, as the parties argue in brief, the second paragraph and language thereafter can be considered to provide an erroneous content to apparently increase the *easement* width to sixty feet. The agreement with the specific conveyancing language providing for the easement clearly defines an easement where the road is now located within the west sixty feet of the property to be twenty feet in width. The easement agreement speaks for itself. *Revelle v. Schultz*, 759 P.2d 1255 (Wyo. 1988). The written language used leads unerringly to the conclusion as it states that the easement is twenty feet and should not then be extended by implication to be something different. *Kincheloe v. Milatzo*, 678 P.2d 855 (Wyo.1984).

In addressing an issue argued by the litigants and considered by the trial court, I provide this analysis to avoid future misconstruction of the majority's decision.