WYOMING GAME AND FISH COM-
MISSION, State of Wyoming,
Appellant (Defendant),

v.

The MILLS COMPANY, a Wyoming
Corporation, Appellee (Plaintiff).

No. 84–101.

Supreme Court of Wyoming.

June 19, 1985.

A.G. McClintock, Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen. (argued) and Roger C. Fransen, Asst. Atty. Gen., for appellant.

Dan B. Riggs (argued) and Haultain E. Corbett of Lonabaugh & Riggs, Sheridan, for appellee.

Before THOMAS, C.J., ROSE, ROONEY and CARDINE, JJ., and JOHNSON, D.J.

CARDINE, Justice.

This is an appeal from a summary judgment granting damages to the Mills Company in a breach of contract action. We reverse and direct judgment to be entered in favor of the state of Wyoming but that the State's counterclaim be denied.

Appellant, Wyoming Game and Fish Commission, raises the following issue concerning breach of contract:

"Did the Appellant breach its contract with Appellee by refusing to purchase game and fish licenses from Appellee at the prices Appellee claimed it was due under the governing contract, where those prices are from ten to sixteen times higher than prices as contemplated by the contract generally and were ten to sixteen times higher than Appellee's actual costs of production?"

Appellee restates the issue as:

"1. Did a valid and enforceable requirements contract exist between Appellant and Appellee for the printing of game and fish licenses as of May 18, 1983?

"2. After placing an order for additional hunting licenses with Appellee on May 18, 1983, did Appellant breach its agreement with Appellee by refusing to allow Appellee to fill Appellant's order of May 18, 1983?

"3. Is Appellant entitled to unilaterally void its agreement with Appellee for the purchase of game and fish licenses as ordered by Appellant from Appellee on the grounds that Appellee was dissatisfied with the prices it was required to pay for those licenses when those prices had been approved in writing by the parties prior to Appellant's withdrawal from the agreement and when Appellant continued thereafter to make purchases from Appellee at the prices and terms stated in the parties' requirements contract?"

Each essentially contends that the other party first breached the contract thereby justifying their respective subsequent actions—the Game and Fish in placing its order with another printing firm and Mills in filing suit to recover damages. Our initial inquiry must be whether summary judgment was appropriate.

In October 1980, appellant Game and Fish and appellee Mills agreed to a requirements contract for the printing of game and fish licenses. These parties had been involved in a business relationship for over fifty years; the dealings between them had been largely informal with orders placed over the telephone and price increases confirmed without the supporting information requested by the contract. This business relationship has been singularly trouble free until the contract of 1980. It is perhaps significant that management of the Mills Company changed in 1979.

The contract was for one year with options for two one-year extensions. The options were exercised by Game and Fish, and the contract was in effect on May 18, 1983 when Game and Fish ordered 49,250 supplemental licenses from appellee Mills. Mills would have charged $80,843.88 [1] for

---

1. The original order of 49,250 supplemental li-    censes would have been billed, under appellee's

these licenses under the contractual provision for supplemental licenses,[2] although the cost to Mills for these licenses would have been $5,259. Game and Fish informed appellee that the price was too high. After negotiations failed, Game and Fish placed the order with another printing firm. Mills filed suit claiming that placing the order with another firm was a breach of the contract resulting in damages to Mills in the amount of $80,843.88. Game and Fish counterclaimed for the amount of money it contends was mistakenly overpaid in 1981 and 1982.

The appellate standard on a review of summary judgment is that:

"When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record." *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147, 150 (1981). See also, *Roth v. First Security Bank of Rock Springs, Wyoming*, Wyo., 684 P.2d 93 (1984), and *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334, 336 (1983).

■ A summary judgment is appropriate if there are no issues of material fact. *Johnson v. Soulis*, Wyo., 542 P.2d 867

(1975). A fact is material for purposes of a summary judgment if proof of that fact would effectively establish an essential element of the claim asserted or would refute an essential element as a defense. *Schepps v. Howe*, Wyo., 665 P.2d 504 (1983), and *Hyatt v. Big Horn School Dist. No. 4*, Wyo., 636 P.2d 525 (1981). It is improper to grant a summary judgment if there is a dispute of material fact. *Wood v. Trenchard*, Wyo., 550 P.2d 490 (1976). If the evidence leads to conflicting interpretations or if reasonable minds might differ, summary judgment is improper. *Weaver v. Blue Cross-Blue Shield of Wyoming*, Wyo., 609 P.2d 984 (1980). Summary judgment is only appropriate for cases sounding in contract when the language of the contract is clear and unequivocal because then the contract construction is a matter of law. *Kuehne v. Samedan Oil Corp.*, Wyo., 626 P.2d 1035 (1981).

Applying these principles to this case, we must conclude that there are no genuine issues of material fact. Both parties agree that the facts are undisputed and that summary judgment is proper, although each contends that it should be granted in its favor. It is undisputed that the parties entered into a contract and that the bid prices were based upon an initial estimated lot of 1,000 with estimated supplemental lots of 100. It is undisputed that before appellee Mills submitted its bid, it obtained a price list from Eagle Printing and Business Forms, Inc. in Montana. The bid submitted equalled the prices of Eagle Printing and Business Forms, Inc. plus a one-third markup. Mills stated on the bid application that 100 percent of the printing was to be done in the state of Wyoming. None of the licenses were ever printed in Wyoming. All were printed by Eagle Printing and Business Forms, Inc. in Montana.

---

interpretation of the contract, at $80,843.88, the requested damages in this case. Ultimately, 56,810 supplemental licenses were printed by a different company, which if printed by appellee in accordance with its interpretation of the contract, would have resulted in a charge of $93,253.62.

2. The provision for supplemental licenses was based upon a cost price of $164.15 per 100 licenses. The regular price for these licenses was $97.95 per 1,000.

The contract provided for price adjustments during the term of the contract. Section 11, Price Adjustments, provided:

"(a) If, during the term of the contract, the bidder's net prices to their customers for items like those listed herein are reduced below the price quoted herein, it is understood and agreed that the benefits of such reduction shall be extended to the State of Wyoming.

"(b) If, during the term of the contract, the bidder's cost for materials, labor, transportation, etc. are increased, the bidder may apply to the Purchasing Administrator for a corresponding contract price adjustment. Such application must be accompanied by sufficient information to justify approval, provided, however, no application for upward price adjustments will be approved during the first thirty (30) days of the contract period."

The intent of the contracting parties together with common sense and good faith are the most important considerations in construing a contract. *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982). Courts must construe a contract as a whole, avoiding constructions which would render a provision meaningless. A presumption exists that a particular provision is placed there for a purpose. *Sunburst Exploration, Inc. v. Jensen*, Wyo., 635 P.2d 822 (1981), and *Shepard v. Top Hat Land & Cattle Company*, Wyo., 560 P.2d 730 (1977).

We recently reiterated the basic rules of contract interpretation in *Cheyenne Mining and Uranium Company v. Federal Resources Corp.*, Wyo., 694 P.2d 65, 70 (1985) (quoting from *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980)):

" 'Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. And the contract as a whole should be considered, with each part being read in light of all other parts. The interpretation and construction is done by the court as a matter of law.' " (Citations omitted.)

The intent of the involved parties is determined by an objective approach. "A party's intention will be held to be what a reasonable man in the position of the other party would conclude his manifestations to mean." *Shrum v. Zeltwanger*, Wyo., 559 P.2d 1384, 1387 (1977).

Twice during the contract period Mills applied for and was granted a price increase according to these contract provisions. For supplemental orders of large quantities, Eagle Printing and Business Forms, Inc. based its price to Mills on the larger numbers; however, Mills charged the Game and Fish according to the 100 lot estimates. Appellant contends that § 11(a) required Mills Company to pass on the reduced price obtained from Eagle to the state of Wyoming. Appellee Mills Company contends that this provision is not applicable because it did not have any other customers for "items like those listed," in that it did not print fish and game licenses for any other customer.

The construction that Mills would have us give this provision would render it nonsensical. It could never have a practical application. We cannot believe that this was a manifestation of the parties' intent at the time the contract was entered into. The provision is entitled *Price Adjustments*. Subsection (b) provides for an increase in the payment to the bidder when its costs are increased. Subsection (a) provides for a corresponding decrease for the State if the bidder's prices are reduced. Thus, it is apparent that it was the intent of the parties that prices be adjusted upon an increase or decrease in cost. The provision concerning reduction in cost does not state that the items must be identical, e.g., fish and game licenses, but refers to "items like those listed herein." We conclude it was the intent of the parties that if the cost of "items like those listed" would be reduced to customers of Mills Company, that the reduction in price would be passed on

to Game and Fish. Dealings between these parties indicate that it was the practice of Mills Company, in establishing net prices to their customers, to mark up the Eagle bid by one-third.

■ The cost of printing the licenses in this case ($5,259.00) plus the markup of Mills Company would have resulted in a price for this order substantially below the Mills Company contract price of $80,843.83. As we have said, such benefit of the reduced price should have been "extended to the State of Wyoming." See contract, § 11, Price Adjustments. When Game and Fish contacted the Mills Company about the cost of the licenses, a representative of Mills Company stated:

"* * * I am talking right off the top of my head. I haven't figured anything. But if it will help you, we will knock ten, eleven thousand bucks off this."

An offer to reduce the price quoted by "ten, eleven thousand" dollars was not a good-faith offer nor did it satisfy the requirements of the agreement that "the benefits of such [price] reduction shall be extended to the State of Wyoming" as the contract states and as the parties intended.

Accordingly when Game and Fish requested a reduction in price and Mills did not make a good-faith offer to extend the benefit of the reduced price to the state of Wyoming, it was a breach of the contract by Mills and Game and Fish could then properly seek out another printing firm as it did.

Finally, in passing, we note that if the Game and Fish had known that Mills was not doing its own printing, the terms of subsection (a) might have more closely corresponded to the actual situation and perhaps stated that if the price to Mills from its supplier was less than the bid price, then the subsequent cost to Game and Fish would be reduced accordingly. We cannot hold the Game and Fish to a constrained reading of the contract in light of the fact that they were unaware of the true situation, i.e., that Mills, contrary to its representation on its bid, was doing none of the actual printing but had subcontracted the printing to an out-of-state agency.

■ Game and Fish counterclaimed suing for the money it contends was mistakenly overpaid in 1981 and 1982. The counterclaim was dismissed. Appellant maintains that they mistakenly believed they were obligated by the terms of their contract to pay the charged prices. Appellant, however, never indicated to Mills that they intended to rely on § 11(a) in previous years but paid the submitted invoices without protest.

"It is elementary that an innocent party may waive a breach of a contract and continue performance on his part. If such performance is continued with no conditions attached, the innocent party has made an election and waived the breach." *Western Transmission Corp. v. Colorado Mainline, Inc.*, 376 F.2d 470, 472 (10th Cir.1967).

Game and Fish waived its right to demand compliance with this section until May 18, 1983.

Game and Fish also contends that the contract should be declared void and illegal in violation of § 16–6–301, W.S.1977. The bid submittal stated that:

"If awarded this bid, 100% of the printing will be done at our plant located at Sheridan, Wyoming.

"A preferential of ten percent (10%) will be applied to any contract for printing done within the State of Wyoming provided the printer either owns, operates, and/or maintains an establishment in the State of Wyoming and agrees to perform at least seventy-five percent (75%) of the work called for by the contract in the State of Wyoming. The preferential will be applied after deduction of any discount offered. W.S. 9–5–501, as amended."

Section 9–5–501, W.S.1977, now titled § 16–6–301, W.S.1977, provided in pertinent part:

"Whenever a contract is let * * * by the state of Wyoming or any department thereof, or any of its subdivisions, for public printing, * * * such contract shall be let to the responsible resident making

the lowest bid if such resident's bid is not more than ten percent (10%) higher than that of the lowest responsible nonresident bidder. Any successful resident bidder shall perform at least seventy-five percent (75%) of the contract within the state of Wyoming. Except, that the provisions of this act [§§ 9–5–501 to 9–5–503] shall not apply to any contract for the compilation, codification, revision, or digest of the statutes or case law of the state of Wyoming."

Mills contends that this statute is not applicable under the circumstances of the contract since Mills Company was the only bidder. The Game and Fish contends that the residency of Mills precluded its looking for other bids and induced it to exercise its option to extend the contract.

■■■ We do not agree that the contract is void. This section was not violated since Mills was the only bidder. Jerry McCune stated in his affidavit that:

"Had the Mills Company notified the Purchasing Division, prior to performance of the contract awarded under Bid No. 0202–L, that they had determined to subcontract a majority of the contract to a non-resident printer the Purchasing Division would have investigated to determine the identity and competence of the proposed subcontractor. Although the Mills Company contract for 1981 would probably not have been rebid the existence of another potential bidder who could obviously do the work required at a competitive rate would likely have resulted in the Game and Fish license contract for 1982 being rebid rather than being renewed with the Mills Company under their 1980 bid."

The fact that they did not do the printing in Wyoming is relevant to the construction of the contract terms. However, since Mills was the only bidder, that fact is not relevant to the application of the preference statute, particularly since the Game and Fish acknowledges it would have entered into the initial contract anyway. We, therefore, reverse as to damages granted Mills, direct that judgment be entered in favor of Game and Fish, and affirm as to the dismissal of the Game and Fish counterclaim. Reversed and remanded for entry of judgment consistent with this opinion.