TREEMONT, INC., a Wyoming corporation, Appellant (Plaintiff),

v.

Robert C. HAWLEY and Mary Elizabeth Hawley, husband and wife, Appellees (Defendants).

No. 94–35.

Supreme Court of Wyoming.

Dec. 8, 1994.

James L. Edwards of Stevens, Edwards & Hallock, P.C., Gillette, representing appellant.

W. Thomas Sullins, II and P. Jaye Ripley of Brown & Drew, Casper, representing appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Appellant appeals from an order and decree granting summary judgment in favor of appellees. The district court found appellant in default for failure to abide by the terms of an agreement to purchase land located in Converse County, Wyoming and. rendered judgment declaring the agreement terminated. Appellant contends that no breach occurred and that the district court added language to the contract in order to arrive at its result. Appellant argues that termination of the contract and forfeiture of the monies paid was not an equitable solution to a dispute involving divergent interpretations of the contract requirements. Appellees contend they were entitled to summary judgment because appellant blatantly ignored a provision of an unambiguous contract.

We affirm.

## I. ISSUES

Appellant presents the following issues for review:

I. Whether summary judgment against the appellant was proper under W.R.C.P. 56.

II. Whether summary judgment should have been granted in favor of the appellant and against appellees.

III. Is termination of the contract and forfeiture of the monies paid under the contract equitable?

Appellees restate the issue:

Whether summary judgment was properly granted in favor of appellees in this case based upon the dual findings of the court below that there is no genuine issue of material fact with respect to the clear and

unambiguous contract entered into between the parties and that appellees are entitled to judgment as a matter of law.

## II. FACTS

Appellees, Robert C. Hawley and Mary Elizabeth Hawley (Hawleys), are the owners of 4,000 plus rural acres of real property located in Converse County (Hawley land). The property contains substantial forested areas and is described as being uniquely suited for recreational activities.

During the summer of 1992, John F. Rand (Rand) offered to buy the Hawley land with the understanding that the property was being purchased for Rand's personal and recreational use and that the land would not be used for commercial purposes. The parties agreed on terms and scheduled a closing date.

Shortly before closing, the Hawleys were informed that appellant, Treemont, Inc. (Treemont), would be the purchaser and that Rand's partner, Richard Maury, would handle the routine matters affecting the sale of the property. On December 3, 1992, the parties entered into an Agreement for Warranty Deed (Agreement) for the purchase of the Hawley land.

According to the terms of the Agreement, the total sale price for the Hawley land was $665,782.50. Treemont was required to make a down payment of $150,000.00; $25,000.00 was presently held by the Hawleys and the remaining $125,000.00 was to be paid at the time the Agreement was signed. The balance plus interest was amortized over a five year period, with payments of $132,607.68 due annually.

The Agreement provided that Treemont would furnish the Hawleys with a copy of all contracts associated with the removal or sale of timber and provide advance notice of any timber removal plans. Additionally, Treemont would deliver all monies received under any timber contracts to the Hawleys' escrow agent within five days after their receipt, as long as an outstanding balance remained due to the Hawleys.

Just prior to the December 3, 1992 closing of the sale of the property, Treemont entered into a three-year contract with the Brand S Corporation (Brand S) for the sale of timber from the Hawley land. On December 1, 1992, Brand S paid Treemont a $50,000.00 advance payment on the sale of timber. Treemont did not disclose this timber contract to the Hawleys at closing nor deposit the timber monies in the escrow account. Instead, Treemont silently used the $50,000.00 as part of the down payment.

The Hawleys learned of the timber contract and the $50,000.00 Brand S payment in April, 1993. On April 29, 1993, they notified Treemont that it was in default under the Agreement due to Treemont's failure to transfer the $50,000.00 into the Hawleys' escrow account as provided in the Agreement. In response to the notice of default, Treemont petitioned the district court for a declaratory judgment. The Hawleys counterclaimed seeking declaratory relief, injunctive relief and damages.

Both Treemont and the Hawleys moved for summary judgment. On October 20, 1993, the district court denied Treemont's motion. The district court determined that a factfinder could reasonably decide, based upon controverted facts, that Treemont had defaulted.

On December 21, 1993, the district court granted the Hawleys' motion for summary judgment. Finding no genuine issue of material fact, the district court determined that the plain intention of the parties, as ascertained from the words of the Agreement, was that Treemont was to pay a down payment, annual payments of $132,607.68, plus all timber contract receipts, as long as a balance was due under the Agreement. The district court found that Treemont breached the terms of the Agreement when it failed to pay the Hawleys the $50,000.00 Brand S paid as an advance payment on the sale of timber. The district court declared the contract terminated and awarded the subject escrow, including all monies paid, to the Hawleys.

It is from this order of summary judgment that Treemont appeals.

## III. DISCUSSION

Summary judgment is a proper means of reaching the merits of a controversy where

no material issue of fact is present and only questions of law are involved. *England v. Simmons*, 728 P.2d 1137, 1141 (Wyo.1986).

W.R.C.P. 56 governs summary judgment and provides, in pertinent part:

> (c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Our rules for reviewing summary judgment on appeal are well established. We will affirm a summary judgment where no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Sandstrom v. Sandstrom*, 880 P.2d 103, 105 (Wyo.1994) (*quoting Foianini v. Brinton*, 855 P.2d 1238, 1240 (Wyo.1993)); *Lyden v. Winer*, 878 P.2d 516, 518 (Wyo. 1994); *Eiselein v. K–Mart, Inc.*, 868 P.2d 893, 894 (Wyo.1994); *Lynch v. Norton Const., Inc.*, 861 P.2d 1095, 1097 (Wyo.1993); *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993); *Brown v. Avery*, 850 P.2d 612, 614–15 (Wyo.1993); *Equality Bank of Evansville, Wyo. v. Suomi*, 836 P.2d 325, 328 (Wyo.1992).

We give no deference to the district court's decisions on issues of law. *Smith, Keller & Associates v. Dorr & Associates*, 875 P.2d 1258, 1264 (Wyo.1994); *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993); *Prudential Preferred Properties*, 859 P.2d at 1271; *Darlow v. Farmers Ins. Exchange*, 822 P.2d 820, 823 (Wyo.1991). A grant of summary judgment is reviewed from the viewpoint most favorable to the party opposing the judgment. *Lynch*, 861 P.2d at 1097; *Smith v. Nugget Exploration, Inc.*, 857 P.2d 320, 322 (Wyo.1993) (*quoting Knadler v. Adams*, 661 P.2d 1052, 1053 (Wyo. 1983)); *Miller v. Campbell County*, 854 P.2d 71, 75 (Wyo.1993) (*quoting Abell v. Dewey*, 847 P.2d 36, 38–39 (Wyo.1993)).

In a contract case such as the one before us, summary judgment is appropriate when two conditions are met. First, there must be no genuine issues of material fact. Second, the provisions of the contract must be unam-biguous; because where the language is unambiguous, the construction of the contract's provisions is a matter of law. *Moncrief v. Louisiana Land and Exploration Co.*, 861 P.2d 516, 523 (Wyo.1993); *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 651 (Wyo.1989); *Ricci v. New Hampshire Ins. Co.*, 721 P.2d 1081, 1085 (Wyo.1986); *Wyoming Game and Fish Com'n v. Mills Co.*, 701 P.2d 819, 821 (Wyo.1985).

The material facts of this case are not disputed. Both parties agree they entered into an agreement to effectuate the sale of land from the Hawleys to Treemont. Both parties agree that on December 1, 1992, Treemont received $50,000.00 from Brand S in timber monies. Both parties agree that Treemont did not pay into the escrow account an additional $50,000.00 over and above the December 3, 1992 down payment.

 Whether a contract is ambiguous is a de novo question of law for the reviewing court. *Prudential Preferred Properties*, 859 P.2d at 1271. An ambiguous contract is one which has language conveying a double or obscure meaning. *McNeiley v. Ayres Jewelry Co.*, 855 P.2d 1242, 1244 (Wyo.1993). A party's subsequent disagreement concerning the contract's meaning does not establish an ambiguity which would require resort to extrinsic evidence. *Moncrief*, 861 P.2d at 524.

We agree with the district court that the language of the Agreement between the Hawleys and Treemont is unambiguous. The language is plain and the obligations of the parties are specifically stated. The question we must ask is whether the Hawleys were entitled to summary judgment as a matter of law. The answer lies in whether the language of the Agreement disallowed Treemont's use of the $50,000.00 timber monies as part of the required $150,000.00 down payment.

 When provisions are clear and unambiguous, our examination is confined to the "four corners" of the document to construe the intent of the parties. *Prudential Preferred Properties*, 859 P.2d at 1271. "In giving effect to the contracting parties' intent, as expressed in the language of their

written contract, this court abides by the rule that common sense and good faith are the leading characteristics of contract construction." *Moncrief,* 861 P.2d at 524. *See also, Wangler v. Federer,* 714 P.2d 1209, 1213 (Wyo.1986). We give effect to the language of the parties in accordance with the meaning that language would convey to reasonable persons at the time and place of its use. *Klutznick v. Thulin,* 814 P.2d 1267, 1270 (Wyo.1991). If we cannot determine a valid reason for variance, we will confirm the intent of the parties in their agreement. *Prudential Preferred Properties,* 859 P.2d at 1271.

■ Treemont asserts that under the terms of the Agreement, no breach occurred; the $50,000.00 timber money was paid at closing and that payment was all the Agreement required. Treemont contends that the district court added language to the contract in order to find a breach. Treemont asserts there was no language in the Agreement prohibiting the use of timber monies as part of the down payment.

The *district court, in its decision letter* dated November 24, 1993, concluded:

11. The Agreement for Warranty Deed is not ambiguous in its relevant terms.

12. The plain intention of the parties may be determined from the words of the Agreement for Warranty Deed; Plaintiff was to pay Defendants a down payment of $[1]50,000 *plus* annual payments of $132.607.68 *plus* all timber contract receipts (so long as a balance was due under the Agreement).

13. Plaintiff breached the terms of the Agreement for Warranty Deed when it did not pay to Defendants, through the escrow agent, the $50,000 received from the Brand S timber purchase contract. The intent of the Agreement was not, and could not be satisfied by including those funds in amounts paid as the down payment.

(Emphasis in original.)

The Agreement contains eleven provisions, or "terms and conditions," each separately numbered and titled. Paragraph I sets forth total cost and provisions for the down pay-ment, interest and an annual payment schedule:

**I. PURCHASE PRICE:** The total sale price shall be the sum of six hundred sixty-five thousand, seven hundred eighty-two dollars and 50/100 ($665,782.50), including all improvements now on said property and any other such improvements as may hereinafter be placed on said premises by Treemont, the latter to be held as additional security in case of failure to fulfill the covenants of this contract.

***Buyer shall pay to sellers the sum of $150,000 down payment as follows: $25,-000 presently held by sellers and $125,000 to be paid on the signing of this agreement.***

The remaining five hundred fifteen thousand, seven hundred eight-two dollars and 50/100 ($515,782.50) shall bear interest at the rate of nine percent (9%) per annum and shall be amortized over a period of five (5) years on an annual payment basis. The annual payments of principal and interest shall be $132,607.68, plus the annual escrow fees.

(Emphasis added.)

Paragraph VII of the Agreement contemplates the possibility that Treemont might become involved in selling timber from the Hawley land, and controls both the timber removal and the receipt of monies from timber sales:

**VII. REMOVAL OF TIMBER:** Treemont shall be entitled to thin the timber on the above-described property. Treemont shall, prior to the removal of any timber from the property, furnish sellers with a copy of all contracts associated with the removal and/or sale of said timber. ***Treemont shall deliver all monies received under said timber contracts to the escrow agent within five (5) days of receipt of Treemont, so long as there remains an outstanding balance owned to sellers.*** Treemont shall, prior to the removal of any timber from the property, submit to sellers the plan of timber remov-

al for sellers' approval, which approval shall not be unreasonably withheld.

(Emphasis added.)

■ This court presumes that each particular provision is placed in a contract for a purpose. *Moncrief,* 861 P.2d at 524. We therefore avoid constructions which would render a provision meaningless. *Wyoming Game and Fish Com'n,* 701 P.2d at 822. We find it significant that Treemont's obligation to pay all timber monies to the Hawleys via the escrow account is found in Paragraph VII, the paragraph addressing timber sale and removal, and not in Paragraph I, the paragraph stating the agreed upon terms of payment.

■ We surmise that Treemont's goal was to have the $50,000.00 credited against two different obligations under the contract. We hold that Treemont was unable to do this. Where language used by parties to contract is plain and unambiguous, a court is not permitted to take liberties with the language to reduce the liabilities clearly assumed. 17A C.J.S. *Contracts* § 296(5) (1963). The construction that Treemont would have us give this Agreement would render the provision directing payment of timber monies to the Hawleys meaningless. *See Wyoming Game and Fish Com'n,* 701 P.2d at 822.

We agree with the district court's finding that the intent of the parties, as properly determined from the words of the Agreement, was that Treemont was to pay the Hawleys the full down payment, the balance and interest in annual installments, and, as long as a balance was due under the Agreement, all timber contract monies. We affirm the district court's summary judgment declaring that Treemont breached the terms of the Agreement when it failed to pay the Hawleys, through their escrow agent, the $50,000.00 Treemont received from Brand S.

We note that Treemont attempts to convolute the default issue by arguing that the only notice of default it received was a notice pertaining to Treemont's failure to use the escrow agent to transfer the controversial $50,000.00 to the Hawleys. The notice sent by the Hawleys stated:

Notice is hereby given that you are in default under [Paragraph] VII of our Agreement for Warranty Deed dated December 3, 199[2], in that all monies received by you under timber contracts concerning the property being purchased are to be delivered to the escrow agent within five (5) days of receipt by Treemont.

This notice was followed within a week by a letter to Treemont's attorney from the Hawleys' attorney clarifying the Hawleys' allegation of default. The letter stated in part:

Our interpretation of the Agreement for Warranty Deed is that payments received by Treemont, Inc. under timber contracts are to be paid to my clients *in addition* to all other payments required under the agreement, *including the down payment.*

(Emphasis in original.) We find Treemont's argument without merit.

■ Treemont also asks this court to consider whether termination of the Agreement and forfeiture of the monies paid under the Agreement is an equitable disposition. This court does not favor forfeiture of contractual rights. *Marcam Mortg. Corp. v. Black,* 686 P.2d 575, 580 (Wyo.1984); *Barker v. Johnson,* 591 P.2d 886, 889 (Wyo.1979). However, where the parties' intentions regarding default are clearly set forth in their contract, this court will not controvert the parties' intentions. *Albrecht v. Zwaanshoek Holding En Financiering, B.V.,* 762 P.2d 1174, 1179 (Wyo.1988); *Younglove v. Graham and Hill,* 526 P.2d 689, 692 (Wyo.1974).

Paragraph VI of the Agreement, governing default, provides the following:

VI. **DEFAULT:** Any of the following events shall be a default under this agreement:

a. The buyer's failure to make any payment within fifteen (15) days as required herein, and buyer's failure to pay the same within fifteen (15) days after written notice.

b. The buyer's failure to perform any other term, condition, or covenant of this agreement after ten (10) days written notice by sellers.

\* \* \* \* \* \*

*In the event buyer fails to correct any default as specified in the written notice of default within the prescribed time, then sellers shall have the right to:*

1. Declare the entire unpaid balance of the purchase price, together with interest, immediately due and payable by buyer, and sellers may, by appropriate legal action, proceed to enforce payment thereof; or,

2. Declare this contract null and void. In such event, *sellers shall be deemed the owners of said real property and improvements thereon free of and clear from any and all rights or claims of buyer, either in law or in equity. In this event, sellers shall have the immediate right to take possession of the subject real property and improvements, and any payments heretofore made by buyer pursuant to this contract shall be deemed to be as and for rentals for the use and occupancy of said real property and improvements and/or as liquidated damages for the breach hereof and shall be retained by sellers.* Sellers and buyer shall be released from any and all obligations in law or in equity under this contract. In the event sellers declare this agreement null and void in accordance with the terms hereof, the escrow agent shall deliver all of said instruments to sellers upon the receipt of an affidavit of default for reasons hereinabove provided * * *.

(Emphasis added.)

The intent of the parties is obvious. A default by Treemont gives the Hawleys the right to take back the land and keep all monies paid. The results are harsh, but when Treemont and the Hawleys signed the Agreement, they were bound by its terms.

We support the district court's disposition and order of forfeiture.

## IV. CONCLUSION

The purpose of summary judgment is to reach the merits of a controversy where only questions of law are involved. Once the district court determined there was no genuine issue of material fact and determined, as a question of law, that the intent of the parties was to transfer to the Hawleys any and all proceeds for timber sales, over and above the down payment and annual installment payments, the district court properly awarded summary judgment in favor of the Hawleys.

Affirmed.