**CALIFORNIA CASUALTY & FIRE INSURANCE COMPANY,**
Plaintiff,

v.

**Donald BRINKMAN and Connie Brinkman, Defendants.**

**No. Civ. 98–CV–186–B.**

United States District Court,
D. Wyoming.

June 3, 1999.

Jeffrey J. Gonda, Sheridan, WY, Michael G. Brady, Boise, ID, for plaintiff.

Alan J. Hageman, Laramie, WY, John E. Stanfield, Laramie, WY, R. Michael Vang, Laramie, WY, for defendant.

### ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court on Defendants Donald and Connie Brinkman's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(3), and (b)(7), and Plaintiff California Casualty & Fire Insurance Company's motion for summary judgment. After reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

#### Background

This case arises from an automobile accident that occurred in the State of Colorado on July 11, 1996. As a result of the accident, the defendants, Donald and Connie Brinkman, required medical treatment. The defendants, who are Wyoming residents, were operating their Wyoming-registered automobile in Colorado under an insurance policy issued by Plaintiff California Casualty. Plaintiff is a California corporation authorized to conduct business in Wyoming.

The Brinkmans have demanded that California Casualty provide to them "no-fault" insurance benefits, commonly known as personal injury protection or PIP. Colorado, by statute, requires resident motorists to maintain first-party coverage in the form of PIP protection in the amount of $50,000 for personal injury and $50,000 in the form of rehabilitation benefits, lost wage benefits, and reasonably incurred expenses for essential services. *See Colo. Rev.Stat.* §§ 10–4–705, 706, 707, 711 (1998). The Brinkmans argue that because the accident occurred in Colorado, their policy was deemed amended to include PIP protection benefits under the out-of-state coverage provision found in Part A of the policy. This provision states as follows:

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

A. If the state of province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

California Casualty paid PIP benefits to the Brinkmans for a short time, although it denied that the Brinkmans' policy provided coverage for the benefits. California Casualty eventually ceased these payments.

After the PIP payments stopped, the Brinkmans complained to the Colorado Department of Regulatory Agencies, Division of Insurance. The Colorado Commissioner of Insurance initiated an investigation; California Casualty was faced with

possible sanctions including the loss of any right to do business in Colorado if it failed to comply with the Colorado No–Fault Act.

California Casualty then filed the present declaratory judgment action. Plaintiff asks the Court to declare that no coverage is provided to the Brinkmans under the Policy for any PIP coverage mandated by the Colorado No-fault Act, and that coverage is provided to the Brinkmans under Wyoming, not Colorado, law. Defendants filed a counterclaim alleging breach of contract, bad faith, and equitable estoppel. The Court now turns to the parties' pending motions.

## A. Defendants' Motion to Dismiss

### 1. Standard

▮ Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may take two forms. *See Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir.1995). First, defendants may make a facial attack on the complaint's allegations that question the sufficiency of the complaint. When reviewing these kinds of allegations, the Court must accept the allegations as true. *See id.* Second, defendants may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack, the Court may not presume the truthfulness of the complaint's allegations, but has wide discretion to allow other documents to be considered to resolve disputed jurisdictional facts. *See id.* at 1003. Only when resolution of the jurisdiction question is intertwined with the merits of the case must the Court convert the 12(b)(1) motion

to a Rule 56 summary judgment motion. *See id.* The party invoking federal jurisdiction, the plaintiff in this case, bears the burden of proof of establishing jurisdiction. *See Penteco Corp. v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir.1991).

### 2. Characterization of the Present Action

As an initial matter, the Court must characterize the present action. The parties disagree as to the nature of the case: California Casualty argues that the action is merely a contract dispute between an insurer and insured while the Brinkmans contend this case lies in tort, since it stems from an automobile accident.

▮ Insurance disputes pose a characterization problem because they possess characteristics of both contract and tort. However, because this action involves a first-party coverage dispute between insureds and their own insurer, the Court finds that the action lies in contract. *See, e.g., Squillace v. Wyoming State Employees' & Officials' Group Ins. Bd.,* 933 P.2d 488, 491 (Wyo.1997) (an insurance policy is a contract); *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 750 (Colo. 1990) (same). In essence, California Casualty argues that the Policy does not incorporate the Colorado provisions of the Colorado No–Fault law while the Brinkmans disagree, arguing that the Policy's language clearly contemplates the application of other states' laws in out-of-state accidents. Thus, the Court will treat this case as one of contract interpretation as it turns to Defendants' motion to dismiss.[1]

---

1. The Court notes that if the Brinkmans' insurance contract were silent on the issue of out-of-state coverage, a tricky constitutional issue would present itself regarding Colorado's ability to require an insurance company to pay PIP benefits under an out-of-state contract involving out-of-state parties. However, as the Court will explain later in this order, the insurance policy's out-of-state coverage provision may likely incorporate the terms of the Colorado No–Fault Act. Given that the contract may incorporate the Colorado statute, the Court need not address, at this time, the possible constitutional questions lurking beneath this dispute. After all, "[i]t is a fundamental rule of judicial restraint ... that [c]ourt[s] will not reach constitutional questions in advance of the necessity of deciding them." *American Mfrs. Mut. Ins. Co. v. Sullivan,* — U.S. —, —, 119 S.Ct. 977, 991, 143 L.Ed.2d 130 (1999). Only if the trier of fact finds that the policy's out-of-state coverage provision does not incorporate the Colorado No–Fault statute, will the Court address any potential constitutional issues in this case.

### 3. Subject Matter Jurisdiction

Defendants first ask the Court to dismiss this suit pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiff alleges three grounds for subject matter jurisdiction in this case: 28 U.S.C. § 2201, based on the Declaratory Judgment Act, federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332. *See* Amended Compl. ¶ 3. The Court will address each ground in turn.

#### a. Declaratory Judgment Act

■ California Casualty lists 28 U.S.C. § 2201, the Declaratory Judgment Act, as one ground for jurisdiction in this case. However, the Declaratory Judgment Act, in and of itself, does not confer jurisdiction upon federal courts. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir.1996). In declaratory judgment actions, the parties' position "is often reversed: the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendant." *Id.* "It is the character of the impending action, not the [declaratory] plaintiff's defense, that determines whether there is federal question jurisdiction." *Id.* Therefore, the Court must look to the potential suit by the Brinkmans to determine if jurisdiction exists; California Casualty cannot rely on the Declaratory Judgment Act as a means to obtain jurisdiction.

#### b. Federal Question

■ As mentioned above, in order to establish jurisdiction under § 1331, California Casualty must show that a potential suit brought by the Brinkmans would raise a federal question. In other words, "federal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law." *See id.* (citing see *Franchise Tax Bd. v. Construc-*

*tion Laborers Vacation Trust*, 463 U.S. 1, 19, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "Accordingly, federal question jurisdiction in this case turns on whether there would be federal question jurisdiction over the well-pleaded complaint" that the Brinkmans may bring against California Casualty. *Cardtoons*, 95 F.3d at 964.

Because the Brinkmans have filed a counterclaim in this case, the Court need not speculate as to the nature of their well-pleaded complaint. The Court finds that any complaint filed by the Brinkmans would be substantially identical to the counterclaims they filed in the present case. Consequently, the Court need only review the counterclaims to determine if they present a federal question. The Court finds that they do not.

The Brinkmans brought four causes of action in their counterclaim: (1) Breach of contract, (2) bad faith, (3) equitable estoppel, and (4) attorney fees/punitive damages. These claims arise under state law; none of the claims implicate federal law in any manner. As a consequence, Plaintiff California Casualty cannot establish jurisdiction based upon a federal question.[2]

#### c. Amount In Controversy

In order to obtain jurisdiction in federal court under 28 U.S.C. § 1332, California Casualty must prove that the parties are citizens of different states and that the amount in controversy exceeds $75,000, not including interest and costs. *See* 28 U.S.C. § 1332(a). The parties do not dispute that they reside in different states— Plaintiff in California and Defendants in Wyoming. The Brinkmans, however, contend that the amount in controversy in this case does not exceed $75,000.

■ In a declaratory judgment action, the amount in controversy is measured by "the value of the object of the litigation."

---

**2.** In addition, although Plaintiff alleges that many constitutional questions are implicated in this suit, there are no federal causes of action that would allow California Casualty to file an independent claim against the

Brinkmans. The Brinkmans are neither state actors nor entities specifically targeted by federal statute (such as employers) to be held responsible in specific federal causes of action.

*Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Dismissal is appropriate only if it appears to a legal certainty that the jurisdictional amount is not met. *Id.* at 346–48, 97 S.Ct. 2434. To determine the amount in controversy, the Court looks to the pecuniary effect an adverse declaration will have on either party to the lawsuit. *See Oklahoma Retail Grocers Assoc. v. Wal–Mart Stores, Inc.,* 605 F.2d 1155, 1159 (10th Cir.1979).

■ The Court finds the amount in controversy requirement has been met here. The jurisdictional amount in controversy is one that exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a) (1994). The underlying object of this litigation—the Brinkmans' breach of contract, bad faith, and estoppel claims against California Casualty—could certainly lead to a recovery greater than $75,000. A declaratory ruling adverse to the Brinkmans would mean termination of their claims against California Casualty; the Court cannot say to a legal certainty that such a loss would be less than the jurisdictional amount.

Alternatively, a ruling by this Court that the Brinkmans' automobile insurance policy incorporates the Colorado PIP statute would trigger a possible $50,000 per person payment for medical expenses and $50,000 per person payment for rehabilitation. *See Colo.Rev.Stat.* § 10–4–706(b)(I), (c)(I) (1998). Although the Brinkmans have yet to accrue such medical expenses, the Court cannot say to a legal certainty that their continuing medical treatment will total less than the jurisdictional amount. If California Casualty is held responsible for the PIP payments, it would be responsible up to the statutory limit—$100,000 per person, per accident. California Casualty has thus met the jurisdictional amount in controversy requirement.

### 4. Case and Controversy

■ Defendants also argue for dismissal of this action because no actual case or controversy exists as required under Article III of the United States Constitution. *See Cardtoons,* 95 F.3d at 965 (case and controversy requirements apply to declaratory judgment actions). In order to satisfy this requirement, there must be a real controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law should be based upon a hypothetical set of facts. *See id.* The Brinkmans insist that the case and controversy in this matter is actually between California Casualty and the State of Colorado, since Colorado is, in essence, the party requiring the application of its No–Fault Act to the Brinkmans' automobile accident. The Brinkmans argue that no case or controversy exists between California Casualty and themselves because the Brinkmans have no control over Colorado's application of its No–Fault Act.

This argument misses the point. In the present underlying action, the Brinkmans alone are attempting to enforce their insurance policy—Colorado is not requiring the Brinkmans to pursue a claim against California Casualty. The Brinkmans have made several demands to California Casualty to provide benefits under the Policy. California Casualty has repeatedly denied coverage. A determination by this Court, not based upon hypothetical facts but upon actual events, will resolve the coverage dispute between the Brinkmans and their insurer. Thus, an actual case and controversy exists between the Brinkmans and California Casualty: The Brinkmans believe California Casualty owes them policy benefits while California Casualty disagrees.

### 5. Indispensable Parties

The Brinkmans contend that the State of Colorado and the State of Wyoming are indispensable parties for the purposes of the present declaratory judgment action. Further, the Brinkmans argue that because Rule 19(a) of the Federal Rules of Civil Procedure requires joinder of indispensable parties, and because this Court

cannot join the indispensable party of the State of Colorado due to its privilege of Eleventh Amendment immunity, the Court must dismiss this case. The Brinkmans' argument is without merit.

The joinder of parties in declaratory judgment actions is governed by the general joinder provisions found in Rule 19 of the Federal Rules of Civil Procedure. *See State Farm Mut. Auto. Ins. Co. v. Mid–Continent Cas. Co.,* 518 F.2d 292, 294 (10th Cir.1975). The Court employs a two-part analysis to determine whether a party is indispensable. *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,* 94 F.3d 1407, 1411 (10th Cir. 1996). First, the Court must determine under Rule 19(a) whether the party is necessary to the action and "must therefore be joined if joinder is feasible." *Id.* "If the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable." *Id.* If so, the Court must dismiss the suit. *See id.*

To determine if a party is "necessary" under 19(a), the court must consider: "(1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations."[3] *Id.*

First, the Court finds that complete relief is available to the present parties to the suit. At its heart, this case is one of contract interpretation. If the Brinkmans' policy is deemed to have incorporated the laws of Colorado, California Casualty must pay PIP benefits. If the

Court finds that the policy does not incorporate Colorado law, then no PIP benefits are due. California Casualty's prayer for relief simply requests the Court to find that "[n]o coverage is provided to the Brinkmans under the Policy for any "nofault" or PIP insurance benefits required by Colorado law." Am. Compl. Decl. J. at 5. The Court is able to make this determination and thus grant the parties' relief.

Second, the Court finds that no absent parties have an interest in this suit that would be impaired by their absence. The State of Colorado has little interest in the determination of a contract dispute between two Wyoming residents and a California insurer. Granted, the dispute is over PIP benefits provided by a Colorado statute that potentially has been incorporated into the Brinkmans' policy. However, the only interest Colorado has in this suit is the proper "application" of its statute, not whether its statute has been incorporated into a particular contract. Colorado's interests would not be impaired by this Court's application of Colorado law to a particular set of facts. The Court is specially suited to conduct such analyses; having Colorado as a party to this suit would neither assist the Court nor harm the interests of the State of Colorado.

Finally the Court finds the third factor—whether a party would be subjected to a substantial risk of multiple or inconsistent obligations by failure to join a third party—inapplicable to the present situation. Neither the Brinkmans nor California Casualty would incur further obligations if Colorado is not joined in this contract dispute. Thus, the three factors enunciated in *Rishell* indicate that the State of Colorado is not a necessary party

**3.** Rule 19(a) provides in pertinent part:
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the dispo-

sition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
Fed.R.Civ.P. 19(a).

to this litigation.[4] Since joinder is not necessary, the Court will not dismiss the case based upon the failure to join indispensable parties.

### 6. Venue

■ Finally, the Brinkmans contend that venue is improper in the District of Wyoming because Colorado state court is the only place where all necessary parties, claims, and defenses can be joined in a single action. Accordingly, they ask this Court to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3).

■ First, California Casualty counters that the Brinkmans have waived their right to challenge venue because they did not raise this defense in their Answer. This argument is without merit. A party waives the right to challenge venue if it fails to raise that defense either in a responsive pleading or in a motion to dismiss under Rule 12(b)(3). *See Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir.1996) (citing *Fed.R.Civ.P.* 12(h)(1)). Because the Brinkmans argued improper venue in their motion to dismiss, they have not waived this defense.

Second, California Casualty asserts that venue is appropriate in the District of Wyoming because this case addresses an insurance dispute involving a contract negotiated in Wyoming, an insured residing in Wyoming, and a car registered and garaged in Wyoming. For other reasons, the Court agrees that venue in the District of Wyoming is proper. Because the Court has already determined that Colorado is not a necessary party to this litigation, there is no need to move the case to Colorado state court in order to join Colorado as a party. In addition, the general venue statute provides, in pertinent part, that when jurisdiction for a civil action is founded only on diversity of citizenship, the action may only be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." *See* 28 U.S.C. § 1391(a). Because the Brinkmans both reside in Wyoming, venue in the District of Wyoming is appropriate. The Court will not dismiss the case on this ground.

### 7. Conclusion

The Court thus **DENIES** the defendants' motion to dismiss on 12(b)(1), (b)(3), and (b)(7) grounds. First, because the Court has subject matter jurisdiction over the case based upon diversity of citizenship and amount in controversy, dismissal pursuant to Rule 12(b)(1) is inappropriate. Second, because the Court finds that Colorado is not a necessary party to the action, the case shall not be dismissed under Rule 12(b)(7). Third, because the defendants in this diversity action are both Wyoming residents, venue properly resides in the District of Wyoming and the Court will not dismiss pursuant to Rule 12(b)(3).

### B. Plaintiff's Motion for Summary Judgment

#### 1. Standard

The standard for summary judgment is well-established and need not be recited in great detail here. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and an issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing summary judgment. *Walker v. Toolpushers Supply Co.*, 955 F.Supp. 1377 (D.Wyo.1997). In determining whether to grant summary judgment, the Court must examine the factual record in the light most favorable to the nonmov-

---

4. Under the same three-step analysis, the Court also finds that the State of Wyoming is not an indispensable party. Wyoming's absence will neither deny complete relief to the parties nor will harm any interests Wyoming may potentially have in the litigation—no Wyoming statutes are implicated in this case.

ing party. *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995).

## 2. Wyoming Law Applies to This Action

▮▮▮ In addressing Defendants' motion to dismiss, the Court has already found that the present action lies in contract. Given this finding, the Court must determine which state's law applies. The Court has examined the contract and has found no choice of law provision contained therein. In diversity jurisdiction cases, the Court then turns to the conflict of law rules of the forum state. The Wyoming Supreme Court utilizes the rules set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. *See Resource Tech. Corp. v. Fisher Scientific Co.,* 924 P.2d 972, 975 (Wyo.1996). The contacts to be considered when determining which state's laws should apply in a contract interpretation case include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the residence of the parties. *See Restatement (Second) of Conflict of Laws,* § 188 (1971).

[19] Applying these standards, it is apparent that Wyoming law applies to the instant contract action. Wyoming was the place of contracting and negotiation of the contract, the residence of the defendants, and the contemplated place of performance of the contract. All significant contacts, with the exception of the location of the subject matter of the contract—an automobile—were exclusively in Wyoming.[5] The Court thus finds that Wyoming law applies to the interpretation of the Brinkmans' insurance policy.

## 3. Plaintiff's Constitutional Arguments Must Fail At This Stage

[20] In its summary judgment motion, Plaintiff California Casualty argues that the Colorado No–Fault statute violates the Contract Clause of the Constitution. Plaintiff contends that the Contract Clause does not allow Colorado to exercise its sovereign power to effect modifications to the private contract between California Casualty and the Brinkmans. Plaintiff also argues that the Colorado No–Fault statute violates the United States Constitution's Commerce Clause. This argument goes that to the extent the Colorado statute pertains to out-of-state insurers and insureds, the statute has the undeniable effect of controlling commercial activity occurring wholly outside the boundary of the state. Plaintiff contends that such control of commercial activity outside a state's borders is unconstitutional. Finally, Plaintiff argues that Colorado's application of its laws to the Brinkmans' insurance contract violates the Due Process and Full Faith and Credit Clauses of the Constitution.

Plaintiff may very well be correct in its assessment of the constitutional quagmire potentially presented by this case. However, as previously explained, the Court will not decide constitutional questions in advance of the necessity of deciding them. *See infra* Note 1. If the Court finds that the policy's out-of-state coverage provision, by its own terms, incorporates the Colorado No–Fault statute, the Court need not look to any constitutional difficulties potentially presented by this case. Thus, the Court must look to the terms of the policy to determine the scope of its coverage.

---

**5.** One could argue that the location of the insured vehicle in the State of Colorado at the time of the accident (or conversely, its absence from the State of Wyoming) requires application of Colorado law under a substantial contacts analysis. This argument has little merit. One must recognize that autos are unique objects of insurance, in that one expects them to move from location to location.

Therefore, the fourth element of the Restatement (location of the contract's subject matter) should probably be given less weight in the automobile context than in other contexts. However, the automobile was principally garaged in Wyoming, and arguably was within Wyoming's borders the majority of the time. All substantial contacts, therefore, point to Wyoming.

 A court's primary focus when construing or interpreting a contract is to determine the parties' intent. *See Woods Petroleum Corp. v. Hummel,* 784 P.2d 242, 243 (Wyo.1989). The initial inquiry centers on whether the language of the contract is clear or ambiguous. *See Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994). Courts make that determination as a matter of law. *See Svalina v. Split Rock Land and Cattle Co.,* 816 P.2d 878, 881 (Wyo.1991). "An ambiguous contract is one which has language conveying a double or obscure meaning." *Treemont, Inc.,* 886 P.2d at 592.

Part A of the insurance policy, entitled "Liability Coverage," states:

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

A. If the state of province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

Part F of the policy, entitled "General Provisions" states that "[t]he terms of this policy that are in conflict with applicable state statutes are amended to conform to such statutes."

Part B of the policy, entitled "Medical Payments Coverage," makes no mention of out-of-state coverage or conformity to other states' conflicting statutes. Arguably, in order for the Brinkmans to recover PIP medical benefits under their policy, the out-of state or conformity provisions found in other sections of the contract must apply to this Part.

 However, the Court cannot determine from the face of the contract, whether Part B of the policy incorporates the out-of-state coverage provision of Part A or the conformity provision of Part F. The division of the policy into "parts" gives the illusion that each part is separate and distinct, with the provisions of one part inapplicable to the provisions of another. On the other hand, general rules of contract interpretation encourage courts to read contract provisions as a whole, not in isolation. In all, the question comes down to the parties' intent. The Court will not (indeed, cannot) decide this factual issue at the summary judgment stage given the record before it.

In sum, the constitutional issues raised by the plaintiff in its summary judgment motion are premature and not appropriately addressed by the Court at this time.[6] In addition, because the terms of the insurance policy are ambiguous, the Court cannot rule upon them at the summary judgment stage. Plaintiff's motion for summary judgment is thus **DENIED.**

### 3. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment are **DENIED.** Each side shall bear their own costs.

---

6. If, after trial on the merits, it is determined that Colorado's No–Fault Act is not incorporated into the Brinkmans' policy, the Court will address the constitutional issues raised by both Plaintiff and Defendants. These issues are matters of law most appropriately decided by the Court.